## CUNNINGHAM vs. FONTAINE.

1. When a judgment entry is amended *nunc pro tunc* during the pendency of a writ of error, and the amendment brought up on *certiorari* previously sued out, the amended judgment is properly before the court.

2. To charge the separate estate of a married woman. under the act of 1850 (Pamph. Acts 1849-50, p. 65), with "articles of family supply," the declaration must allege that she holds her separate estate either under the act of 1850, or that of 1848, to which it is an amendment: an averment, that she has a separate estate "which came to her after the first day of March, 1848," is not sufficient.

3. If the husband dies before suit brought, the right of action survives against the wife, for articles of family supply, under the act of 1850.

ERROR to the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

ASSUMPSIT by Robert C. Cunningham against Eliza Fontaine. The declaration contained three counts, the first of which is the common *indebitatus* count for goods, wares and merchandise furnished by plaintiff to defendant at her special instance and request. The second count alleges, that the defendant, at the time the goods, &c., were delivered, was the wife of one B. B. Fontaine, and that they lived together as man and wife in this State ; that while they were thus living together as man and wife, and supporting and maintaining a house, plaintiff furnished to them, at their special instance and request, "certain articles of family supply, used in their family, such as tea, sugar, &c., which were suitable to the condition in life of their family, and for which the husband would be liable at common law, of the value of $500 ; and plaintiff avers, that, at the time said articles were furnished, the said defendant (then the wife of said B. B. Fontaine, as

aforesaid,) was possessed of separate property, separate and apart from the estate of her said husband, and which came to her after the first day of March, 1848 ; which said sum of $500 the said B. B. Fontaine and Eliza his wife so became liable to pay to said plaintiff upon request, &c.; that the said B. B. Fontaine afterwards departed this life, leaving his said wife Eliza surviving him ; and the said Eliza, after the death of her said husband, was also liable to pay said sum of money, and being so liable, undertook and promised to pay, &c. The third count alleges, that said Fontaine and wife were indebted to plaintiff for articles of family supply, furnished to them by plaintiff, at their special instance and request, during the lifetime of said Fontaine, and being so liable, they promised to pay ; that said Fontaine afterwards died, and defendant, after his death, became liable for said debt, and promised to pay, &c.

The judgment entry recites, that the defendant demurred to the declaration, and her demurrer was sustained, and thereupon the plaintiff was forced to take a non-suit. A writ of error was sued out on this judgment, and at the January term, 1853, the plaintiff assigned for error, 1st, the judgment of the court below on the demurrer to the second count; 2d, the judgment on the demurrer to the third count ; 3d, the judgment on the demurrer to the declaration. On these assignments of error, the judgment was reversed, and the cause remanded ; the court holding, that, as the demurrer went to the whole declaration, and as the first count was good, the demurrer should have been overruled. On a subsequent day of the term, a re-hearing was granted, and a *certiorari* was awarded to complete the record, on the 8th August, 1853. At the May term, 1854, of the City Court, the judgment entry was amended *nunc pro tunc*, so as to show that the demurrer was only to the second and third counts, and not to the whole declaration ; and the amended record was sent up to the June term, 1854, as the return to an *alias certiorari* issued at the preceding January term of the Supreme Court.

P. HAMILTON, with whom was C. W. RAPIER, for plaintiff in error :

The demurrer to the whole declaration should have been

overruled, as the first count is unquestionably good.—8 Ala. 45; 1 Stew. 580.

The merits of the second and third counts depend upon the construction of the acts of 1848 and 1850 relating to married women. The second count states all that is necessary, and then avers that the wife (the defendant) is the survivor. The decision of the court below was, that the wife surviving is not suable for supplies furnished the family during the life of the husband. The language of the statute is, that " the husband shall be severally, and the husband and wife jointly, liable and suable at law." The plaintiff submits, that the common incidents of a joint contract and liability attach to the liability created by these statutes. The vendor of family supplies may, at his option, treat his demand as joint against both husband and wife, or several against the husband. In this case, by his action, he treats his demand as a joint liability. Upon the death of a joint contractor, the action lies against the survivor, and he is suable alone.—1 Chitty's Pl., p. 50, and authorities cited ; 1 Barn. & Ald. 29 ; 3 Brod. & Bing. 302. The declaration may, or not, allege the death of one of the parties ; it is usual to do so in one of the counts.— 1 Chitty's Pl., *supra*. No good reason can be perceived for departing in this instance from the general rule on the subject. In doing so, one object of the law would be defeated, and the creditor be deprived of the security which the statute intended to give him—i. e., the right to obtain payment of such demands out of the wife's separate estate.

On the amended record : It appears that the judgment entry and the statement of the pleading in short differ, as to the extent of the demurrer. Which shall govern ? It is submitted, that the judgment entry must prevail ; it imports absolute verity. The judgment *nunc pro tunc* was rendered in May, 1854 ; while the *certiorari* under which it is brought up was awarded at the preceding January term, on motion of the defendant in error, to bring up a complete record. This judgment, then, is not properly before the court. The writ was to certify what the court below *had done*, and not what it *might afterwards do;* the subsequent action of the court below could not be certified on such a writ. But what right had the court below to alter its record ? The record of the case

had already been removed into this court; its power over the case was gone, until the cause had been remanded by this court.—4 Ala. 1.

DANIEL CHANDLER, *contra:*

At common law, the legal existence of the wife is not recognized; she and her husband are one; her contracts, except when the law presumes that they were made by the authority of her husband, are null and void; she cannot make contracts and sue for their recovery in her own name, nor can she be sued separately and apart from her husband. Does the act of 1850 (§ 7) permit her to be sued, after the death of her husband, for stores and provisions furnished to them jointly during his life? This statute changes the common law; its language is plain and explicit; a liberal construction against its language and meaning must obtain, to authorize such a suit. The death of the husband gives the creditor no authority to sue the wife, at law, on such a contract: to reach her separate property he must go into chancery. The last clause of the seventh section confirms this view of the case.

The third count is clearly defective: it contains no averment that the wife had a separate estate, and was therefore liable. This averment should be distinctly made. Her liability is a special one, and the special facts which render her liable should have been stated. This count does not do this, and therefore the demurrer to it should have been sustained.

Does the second count remedy this defect, and supply this omission? Only partially. It contains an averment that the wife had a separate estate, but is not sufficient to make her or that estate liable, as it does not show that she held it under the provisions of the act of 1850, or that of 1848 to which the last act is an amendment. She might have acquired her separate estate, " after the first of March, 1848," in some other manner than under the provisions of either act, and it would then clearly not be liable. The demurrer to this count was properly sustained.

GOLDTHWAITE, J.—The original judgment entry in this case recited, that the defendants had demurred to the declaration, and a judgment in favor of the defendants on the

demurrer. Upon this judgment a writ of error was sued out, during the pendency of which a motion was made in the court below to amend the judgment *nunc pro tunc*, so as to show that the demurrer was to the second and third counts, and not to the declaration generally. This motion was granted, the judgment amended, and the record as amended brought up by *certiorari*. It is urged on the part of the plaintiff in error, that the judgment *nunc pro tunc* is not properly before this court ; but under our decisions this position is not tenable. In Horne v. Moore, 5 Ala. 234, the service of a writ had been accepted by the defendant, but the acknowledgment of service was not entered on the record. The omission was corrected by motion in the court below, while the writ of error was pending ; and it was held, that the amendment, when made, related back and sustained the judgment. In several other cases, it appears to have been the practice of this court to recognize amendments made in the judgment of the court below, during the pendency of the writ of error (Brown v. Torver, Minor's Rep. 370 ; Evans v. St. John, 9 Porter 187; Hefflin v. McMinn, 2 Stew. 492) ; and as the judgment entry could be amended only so as to speak the truth, and upon evidence of the highest and most conclusive character, and as it relates back and stands in the place of the first judgment, we see no hardship or injustice in recognizing it in this court as the true judgment, which in legal effect it really is.

Regarding the record as presenting the amended judgment for the consideration of the court, the only question is as to the sufficiency of the second and third counts of the declaration.

The second count is framed under, and in reference to, the seventh section of the act of the 13th February, 1850, (Sess. Acts 1849-50, p. 65,) which is in these words : "That for all articles of family supply, or used in the family, which are suitable to the estate and condition in life of the family of such husband and wife, and for which the husband would, by the common law, be liable, the husband shall be severally, and the husband and wife jointly, liable and suable at law ; and the separate estate of the wife, secured to her under the provisions of this act, or of the act to which this is an amendment, shall be subject at law to all debts, contracts and engagements for such articles, by suit against her and her husband." The act

to which this is an amendment was passed on the 1st March, 1848, and contains no provision which it is necessary for us to consider in reference to the points presented in this case.

In the case of Henry and Wife v. Hickman, at the January term, 1853, (22 Ala. 685,) it became necessary for us to examine the section of the act above cited. The question in that case arose, as it does in this, on a demurrer to a declaration against husband and wife, on a demand arising out of the purchase of family supplies; and we held, that to render the declaration good, "it must distinctly appear by it that the wife has a separate estate which is sought to be charged, before any liability appears against her, and before she can have a standing in court." The declaration in that case contained no such averment, and the demurrer was sustained. The count in this declaration, which we are now considering, contains an averment, "that, at the time said articles were furnished, said defendant (then the wife of the said B. B. Fontaine, as aforesaid) was possessed of a separate property, separate and apart from the estate of her said husband, and which came to her after the first day of March, 1848." Does this averment satisfy the demands of the statute, and the decision of this court under it, in the case of Henry and Wife v. Hickman, *supra*?

It evidently was not the intention of the Legislature to charge every kind of separate estate which could legally be created in the wife, with the payment of such debts, but only those which are secured to her by the acts of 1848 and 1850, and which she received and enjoyed under their provisions. The language of the act of 1850, upon this subject, is much too plain for misconception. Its words are, "And the separate estate of the wife, *secured to her under the provisions of this act, or of the act to which this is an amendment*, shall be subject at law to all debts, contracts, and engagements for such articles, by suit against her and her husband." A separate estate created by deed or will, either before or after her marriage, cannot, with any propriety, be said to be secured by these acts, whether such estate was created anterior or subsequent to their passage; and this, for the obvious reason, that these estates are not such as, without the statutes, the husband would have taken in his own right, and as she has received none of the benefits of these acts, she should not be

42

made to bear the burthens imposed by them on those who do receive such benefits. If she holds her separate estate under the provisions of a deed or will, and the sanctions of the law as it stood before the passage of the act of the 1st March, 1848, it can only be charged in such manner, and with such debts, as the law then existing prescribed and sanctioned. The remedy here resorted to was unauthorized by the law, as it then stood, for such demands as are here sought to be recovered.

The remedy given by the act of 1850 is in derogation of the common law, and, consequently, must be strictly pursued. In order to enable the plaintiff to recover, he must prove, that the articles furnished were family supplies, that they were furnished during the coverture, and · sed in the family, and further, that the wife had *a separate estate secured to her under the act of* 1848 *or* 1850. On the plea of *non assumpsit,* the defendant would be entitled to a verdict, without producing any proof, unless all these facts were made out by the plaintiff; or upon a demurrer to the testimony, if either had not been proved, she would be entitled to a judgment. This being the case, it is obvious that a declaration, which does not aver the existence of all of them, is fatally defective; for it is a familiar rule of practice, that the *allegata et probata* must correspond. Proof that the defendant had received a separate estate since the 1st March, 1848, without showing that it was secured to her by that act, or the act of 1850, would not authorize a recovery; for it would not necessarily follow from the fact that she had received a separate estate, that such estate was secured to her under these acts—it may have been settled on her by will or deed, and held and enjoyed by her entirely independent of these statutes. We hence conclude, that a declaration which merely avers that the wife possessed a separate estate, held in her own right, without the further averment that it was secured to her by the act of 1848 or 1850, (as the fact may be,) is fatally defective, and justly obnoxious to a demurrer. Such is the case here, and our opinion is, the demurrer to this count was rightly sustained.

In the case of Henry and Wife v. Hickman, *supra,* the declaration contained no averment whatever that the wife had a separate estate, and the general language employed by the

court was all that was necessary to show the defect; in this case, there is an averment of a separate estate held by the wife, and the necessity consequently arises of deciding whether the averment is sufficiently certain to show that it is such a separate estate as, under the act of 1850, is chargeable at law with the payment of debts contracted for family supplies by the husband during the coverture. There is, therefore, no conflict between the cases.

It is contended, however, that if the declaration contained the averments which are proper, still no recovery could be had against the wife, after the death of the husband, inasmuch as the statute prescribes that she shall be sued jointly with him, and the right of action does not survive against her on his death. We cannot give our assent to this proposition. The statute creates a *liability* on the part of the wife to pay such debts, and gives a remedy to enforce it. Its requisition, that during the coverture the wife shall not be sued separately from the husband, but that both shall be joined, is but the enactment of an old canon of the common law, and should not be extended beyond it. By this, if the liability was that of the wife, and the creditor sought to enforce it during the coverture, he must join the husband; but if the wife survive the husband, she may be sued alone. So here, the wife is jointly liable and suable with the husband while the coverture exists, and shall not be sued without his being joined in the action; but if he die before suit, the liability survives to her, and the creditor's remedy is against her alone.

There is nothing in the act which exempts the joint liability created by it from the rules which govern such liabilities at common law; and it is well settled, that in case of the death of one joint obligor or contractor, the action lies against the survivor. In such cases, it is not absolutely necessary to allege the death of one of the parties, although it may be and generally is done, in one count of the declaration.—1 Chit. Pl. 50-51; 1 Barn. & Adol. 29. Without a clear expression of legislative intention, we would be unwilling to exempt this class of cases from the general rules of law; and we can perceive no such intention in any of the provisions of the acts of 1848 and 1850. It would be extraordinary to allow the death of the husband to defeat the *liability* of the wife, under

a statute, from the very words of which it is evident the Legislature intended to multiply the creditor's securities at law for the payment of his debt, by creating a legal liability on the part of the wife which had no existence until the passage of the act of 1850.

Again; there can be no reason for sending the creditor into chancery, in order to charge a female with the payment of her legal liabilities, unless she be *covert*, and possess a separate estate, which is vested in a trustee, and her husband is insolvent. But when she is discovert, and in the enjoyment of her estate, which she has the right to control or charge as she pleases, a court of equity is without jurisdiction to enforce a legal demand against her. In such cases, if the death of the husband takes away the remedy at law against her, she cannot be proceeded against in any forum, and by his death is discharged from all. liability. Such a result would, we apprehend, scarcely be seriously contended for.

From what has been said with respect to the second count, it is obvious the third count of the declaration is bad. This is also intended to conform to the act of 1850, but it contains no averment of any separate estate in the wife, and is fully disposed of under the ruling of this court in the case of Henry and Wife v. Hickman, *supra*.

There is no error in the record, and the judgment is consequently affirmed.