# Bender and Wife *v.* Meyer & Co.

*Action against Husband and Wife, for Price of Necessaries.*

1. *Liability of wife's statutory separate estate for necessaries; constitutional provisions.*—The constitutional provision which declares that a married woman's property "shall be and remain her separate estate, and shall not be liable for the debts" &c. of her husband (art. XIV, § 6), is affirmatory of the statutes existing at the time the constitution was adopted, and does not abrogate the statutory provision which imposes on such separate estate a liability for articles of comfort and support of the household.

2. *Homestead exemption; pleadable by wife, in bar of action for necessaries.*—In an action against husband and wife, seeking to subject lands, alleged to belong to the wife's statutory separate estate, to the payment of a debt for "articles of comfort and support of the household" (Rev. Code, § 2376), it is a good plea in bar by the wife, that the lands are the homestead of herself and family.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. GEO. H. CRAIG.

This action was brought by M. Meyer & Co., a mercantile

partnership, against John T. Bender and Nancy C. Bender, his wife ; was commenced on the 10th February, 1874, and was founded on an account, amounting to $351.46, for goods, wares, and merchandize, sold and delivered by the plaintiffs to said John T. Bender, between the 19th December, 1871, and 26th October, 1872. The complaint alleged, that the goods sold and delivered " were articles of comfort and support of the household, suitable to the degree and condition in life of the defendants' family, and for which the said John T. Bender would be responsible at common law ;" that at the time the account was contracted, and also at the commencement of the suit, Mrs. Bender was seized and possessed of a certain tract of land at Pleasant Hill in said county, containing about fifteen acres, and particularly described, which she held as her separate estate under the provisions of the Revised Code, and which the plaintiffs asked might be subjected to sale for the payment of their debt. Mrs. Bender demurred to the complaint, but her demurrer was overruled ; and she then filed four pleas, in substance as follows : 1st, that she did not undertake or promise as alleged by plaintiffs ; 2d, coverture ; 3d, that the lands sought to be condemned were the residence of herself and family, were not of the value of two thousand dollars, and were exempt from levy and sale under legal process by the constitution ; and, 4th, a general denial of each and every allegation of the complaint. The court sustained a demurrer to the first, second, and third pleas, and issue was joined on the 4th. The grounds of demurrer to the third plea, as specified, were, " that said plea is not sworn to, and is not a valid claim of exemption under the constitution and laws." John T. Bender pleaded the general issue, and issue was joined on that plea. On the trial, the court charged the jury, that if the goods sold and delivered were articles of comfort and support of the household, suitable to the degree and condition in life of the defendants' family, the lands described in the complaint would be liable for the price, although they were the residence of the defendants' family, and were of less value than two thousand dollars ; to which charge, with others, the defendants excepted. The assignments of error, thirteen in number, present for revision the rulings of the court on the pleadings and evidence, and the several charges given and refused, to which exceptions were reserved, but which require no particular notice.

PETTUS, DAWSON & TILLMAN, for appellants.—1. The constitution declares, in explicit words, that the property of a married woman in this State " shall be and remain her sep-

arate estate," and that it " shall not be liable for any debts, obligations, and engagements of her husband." This has been the paramount law since 1868, when the constitution became operative. The plaintiffs' claim in this case was for the price of goods sold to the husband in 1871–2, which was the debt of the husband. The statute which makes the wife's separate estate liable for necessaries supplied to the family, being inconsistent with the constitutonal provision, is necessarily abrogated by it. If no such statute had been in existence when the constitution of 1868 became operative, a subsequent statute, in like terms, would certainly be unconstitutional. An existing statute stands on no higher ground than a subsequent statute : so far as either conflicts with the constitution, the latter must prevail. It is true the statute declares that the wife's separate estate shall not be liable for the debts of the husband, and yet subjects it to liability for necessaries furnished to the family ; and effect is allowed to both of these provisions. But these provisions are parts of the same general statute, emanating from the same authority, relating to the same subject, and to be construed together so that effect may be given to each. The same rule cannot be applied to a constitutional provision and a statute, which are not of equal force, nor ordained by equal authority ; and so far as they conflict, the statute must always yield.—See *Beecher v. Baldy*, 7 Mich. 488.

2. The court erred in its several rulings as to the right of Mrs. Bender to claim a homestead exemption in the lands. The object of the suit was to condemn those lands to the payment of the plaintiffs' debt ; and the court, in effect, allowed this to be done, notwithstanding the claim of a homestead exemption. If the lands were the family homestead, and did not exceed the prescribed area and value, they were not subject to be sold for the satisfaction of the plaintiffs' debt. This clause of our constitution is almost a literal copy of a provision in the Michigan constitution of 1850, which was construed in *Beecher v. Baldy*, *supra* ; also, *Orr v. Shaft*, 22 Mich. 260 ; 20 Mich. 369 ; 17 Mich. 465.

MORGAN, LAPSLEY & NELSON, *contra.*—1. The benefit of the homestead exemption laws can only be obtained by pursuing the course prescribed by law, making the selection and claim as therein provided.—*Bell v. Davis*, 42 Ala. 460. The exemption is only from sale under final process ; and every obstacle raised by the debtor in advance of final process, whether by demurrer, plea, or otherwise, is without authority of law. *Beecher v. Baldy*, 7 Mich. 488. The act of April 23, 1873, which was designed to carry into effect the constitutional

[Bender and Wife v. Meyer & Co.]

provision, points out and prescribes the method by which the exemption may be claimed and secured; and none other can be pursued.

2. Constitutional provisions must be construed in the light of existing legislation and judicial decisions. When the constitution of 1868 went into force, laws had existed here for twenty years, creating separate estates in married women, and defining the respective rights of the husband and wife and of creditors in such estates; and these laws, under judicial construction, had matured into a complete system. This system the constitution adopted, and placed beyond legislative control, making it the permanent law of the land; and it nowhere shows a purpose to make any radical changes in that system. If there had been any such intention, it would not have been left to inference, but would have been expressed in apt and definite words. There is no necessary inconsistency in declaring that the price of necessaries for the family, although it may be a valid debt against the husband, is also a charge against the wife's separate estate. It is the husband's debt, but it is something more. This precise point was pressed in the argument for appellants, in the case of *Eskridge v. Ditmars & Co.*, 50 Ala. 255.

BRICKELL, C. J.—The assignments of error present several questions, but we deem it necessary to express an opinion on two only, which will probably be decisive of the case. The first is, whether the constitution has relieved the wife's separate estate from its statutory liability for articles of comfort and support of the household? The section of the constitution, which, it is argued, operates to remove the liability, is in these words: "The real and personal property of any female in this State, acquired before marriage, and all property, real and personal, to which she may afterwards be entitled, by gift, grant, inheritance, or devise, shall be and remain the separate estate and property of such female, *and shall not be liable for any debts, obligations, and engagements of her husband,* and may be devised or bequeathed by her the same as if she were a *feme sole.*"—Const. 1867-8, art. 14, § 6.

In *Taylor v. Woods*, 52 Ala. 477, we said: "The constitution is not the origin or beginning of law in the State. It was made by and for a people among whom the common law prevailed, so far as applicable to their condition, and not superseded or repealed by legislation or constitutional provision,—a people having a well-defined, and well-understood system of law, written and unwritten, statute and constitutional. It was not intended to abolish or destroy this

system, and on its ruins raise up another, new and different. This system continues, except so far as it is repugnant to the constitution, subject to such limitations and restrictions as it imposes. In the light of the former law and existing system, new constitutional provisions are to be read and interpreted, if their real meaning is ascertained, and the intent of the lawgiver carried into effect."

In the interpretation of constitutional provisions like that under consideration, the intent of their adoption, the end proposed to be accomplished, cannot well be ascertained, nor can they be justly interpreted and construed, unless the prior state of the law, written and unwritten, is kept in view. It is only by consulting the common law, that we can understand and explain the full import and significance of the terms employed in this section, the changes it may work, and render secure against legislative enactment. By the common law, the husband and wife were regarded as one person, and her legal existence and authority were in a degree merged in that of the husband. She had not capacity to contract, nor the management or disposal of property. If at the marriage she was seized of an estate of inheritance, or she became seized thereof during marriage, the husband became seized, taking the rents and profits during their joint lives, and by possibility during his life, leaving to the wife or her heirs a reversion only. If the estate was of freehold, and not of inheritance, as for her own life, or that of another, the husband became seized of such estate, taking the rents and profits during marriage. Her chattels real passed to the husband, who could sell, assign, or make other disposition of them, at pleasure. He had power to reduce to possession her choses in action, and by reduction they became his own absolutely. Personal property of which she had possession, or of which title and possession accrued during marriage, vested immediately and absolutely in the husband. A liability of all such property to the debts of the husband, and his power to dispose of it, were incidents of the right and interest thus created by the law.

At the adoption of, and for twenty years prior to the constitution, the statutes had changed the common law—had divested the husband of the marital rights to the estate, real and personal, of the wife, which the common law conferred, and declared such estate, whether existing at the time of the marriage, or subsequently acquired, "the separate estate of the wife, not subject to the payment of the debts of the husband."—R. C. § 2371. The manner in which it should be held during coverture; the mode of its alienation; the debts or demands with which it should be chargeable; its descent

and distribution, if the wife died, the husband surviving, and she had not exercised the power, expressly given, of disposition by will,—were defined by statute.—R. C., part 2, title 5, chap. 1, art. 3. The debts or demands with which it is chargeable are, "articles of comfort and support of the household, suitable to the degree and condition in life of the family, and for which the husband would be responsible at common law."—R. C. § 2376. Though a liability is thus fastened on the estate for these debts or demands, the common-law liability of the husband remains, and the liability of the estate can be enforced only through the medium of a suit against him and the wife; or, after suit and judgment against him alone, and return of execution "not satisfied," an order of sale obtained from the court.—R. C. §§ 2376-7.

Interpreting the constitution in the light of the common law, and of the pre-existing statutes, we think its terms, and the intent of its framers, are satisfied, if it is regarded as affirmatory of the statutes, inhibiting a repeal of them, which would restore the common law, divest the wife of title, and invest the husband with a title, to which liability for his debts would follow as an incident. Without the constitutional provision, it rested within legislative power and discretion to repeal the statutes, and to determine whether the common law should be partially or wholly restored; whether the wife should have a separate estate in her property, or a joint estate with the husband; whether the estate should be subject to past or future debts of the husband. Legislative power over the subject would have been plenary, and indisputable. The constitution, of its own unaided force, secures the estate to the wife, frees it from the common-law liability to the payment of the husband's debts, and clothes her with the power of devising or bequeathing it. Legislation cannot deprive her of the estate—cannot take away her power to devise or bequeath it, and cannot fasten on it a liability for the debts of the husband.

A statute repugnant to the constitution, if pre-existing, is abrogated by it; if subsequent, is void, because offending it. At the adoption of the constitution, "contracts for articles of comfort and support of the household" were the debt of the husband, as at common law. They were not the sole and exclusive debt of the husband, but they were charges on the statutory separate estate of the wife, and legal remedies for their enforcement were prescribed. The liability of the husband, and the liability of the separate estate, was in the nature of a joint liability.—*Cunningham v. Fontaine*, 25 Ala. 644; *Sharp v. Burns & Coles*, 35 Ala. 653. It was the character of the consideration, and not the *agency* by which the

contract was entered into—whether by the wife alone, or by the husband alone, or by husband and wife jointly—that was a material inquiry in determining whether the liability existed.—*Durden v. McWilliams*, 31 Ala. 442. The wife and her family having been supplied with necessaries, suitable to their degree and condition in life, the liability of the husband, and the liability of the separate estate, arose. It is from debts created by the husband alone, for which no liability rested on the estate, otherwise than as it might spring from his contract, the constitution frees the wife's separate estate. It does not refer to charges imposed on it by law, in furtherance of the policy to which it owes its creation, providing for the maintenance and support of the wife and her family, while protecting them against the misfortune or extravagance of the husband. We hold, therefore, that the constitution does not free the separate estate from its statutory liability for "articles of comfort and support of the household." That liability remains, capable of enforcement in the mode prescribed by the statute.

2. The remaining question is, can the wife, when sued on such contract, plead in bar, that the lands sought to be subjected as her separate estate are the homestead of the family, exempt from sale for the payment of debts? The common-law principle, that in actions at law the wife cannot be plaintiff or defendant, on contracts made with or by her during the coverture, is not wholly abrogated by the statute. Nor does the statute impose on the wife a personal liability, separately, or jointly with the husband, for articles of comfort and support of the household.—*Henry . v. Hickman*, 22 Ala. 685. The operation of the statute is to impose on the separate estate a liability for articles of comfort and support of the household, and to afford a remedy by action at law to enforce the liability. The judgment rendered is personal against the husband, having the effect of any other personal judgment. As to the wife, no judgment is rendered binding her personally—it is a judgment condemning the separate estate to sale for the satisfaction of the liability. To support the action as to the wife, it must be shown that she has a statutory separate estate; the estate must be described in the complaint, and in the judgment; and its existence when the contract was made, and its continuance to the commencement of suit, must be averred and proved. If the complaint does not by proper averments disclose these facts, it does not, as to the wife, disclose a substantial cause of action, and will not support a judgment by default.—*Childress v. Mann*, 33 Ala. 206; *Durden v. McWilliams*, 31 Ala. 438; *Sprague v. Daniels, Ib.* 206; *Ravisies v. Stoddart*, 32 Ala. 599.

The existence of a statutory separate estate, liable for the satisfaction of the demand, is the indispensable constituent of the wife's liability to suit at law. It will not be denied, it would be an answer and bar to the suit against her, that her estate in the property sought to be charged was not a statutory, but an equitable separate estate.—*Cannon v. Turner*, 32 Ala. 483. The immunity of the estate, on which the plaintiff claims to impose by the action and. judgment a liability, renders the coverture a conclusive bar in a court of law. The homestead of any resident, not exceeding eighty acres in quantity, and not exceeding two thousand dollars in value, is by the constitution exempt from liability for the payment of debts. No court can, without violating the express words of the constitution, condemn it to sale. The third plea was, for the wife, a full answer to the suit, and the court erred in sustaining a demurrer to it, as in the charges given asserting the converse of the plea.

The judgment is reversed, and the cause remanded.