## Seaman *v.* Nolen.

*Creditors' Bill in Equity to set aside Fraudulent Conveyance.*

| 68 | 463 |
|----|-----|
| 99 | 112 |
| 99 | 283 |
| 68 | 463 |
| 113 | 562 |

1. *Conveyance by debtor to creditor; validity as against other creditors.* A creditor may accept from his debtor a conveyance of property, at a fair and reasonable price, in absolute payment of his debt, though the known effect of the transaction may be to leave the debtor without means to meet his other liabilities; but, if the creditor go beyond this legitimate purpose, and provide for securing or reserving a secret benefit to the debtor, knowing that he is insolvent or in failing circumstances, or being chargeable with knowledge of that fact, the whole transaction is tainted with fraud, and the conveyance will be set aside at the instance of other creditors.

2. *Same.*—When a creditor attempts to procure a conveyance of property from his insolvent debtor, using inducements and representations which taint the transaction with fraud; and, finding that the debtor will not make any arrangement from which another creditor is excluded, allows the latter to become a party to the transaction, and they accept a joint conveyance from the debtor; being equal participants in the fruits of the transaction, they are equally chargeable with the fraud by which it was procured.

3. *Homestead exemption; interest or claim of wife.*—Although a married man, owning a homestead, can not make a valid alienation thereof without the "voluntary signature and assent" of his wife, yet she has no title therein, legal or equitable, during the life of the husband; and when they both join in a conveyance of lands embracing the homestead, and the creditors of the husband file a bill in equity to set aside the conveyance on the ground of fraud, the wife cannot maintain a cross-bill to avoid the conveyance of the homestead, on the ground that it was executed without her voluntary signature and assent, when she does not allege that the husband "fails to act" in the premises. (Code, § 2832.)

APPEAL from the Chancery Court of Coosa.

Heard before the Hon. N. S. GRAHAM.

The original bill in this case was filed 3d December, 1877, by George E. Seaman and W. T. & S. H. McWilliams (partners), as creditors at large of A. J. Nolen, on behalf of themselves and all other creditors who might come in, make themselves parties and contribute to the cost of the suit, against the said A. J. Nolen, Mrs. Mary E. Nolen, his wife, A. J.

[Seaman v. Nolen.]

Thomas, and R. C. Sandlin ; and sought to set aside, on the ground of fraud, a conveyance of property, real and personal, executed by said Nolen and wife to said Thomas and Sandlin, and to subject the property to the payment of said Nolen's debts. The conveyance, a copy of which was made an exhibit to the bill, was dated December 24th, 1873, and signed by said Nolen and wife ; was attested by Thos. H. Ferguson, the probate judge of said county, whose certificates as to the acknowledgment thereof by said Nolen and wife, and also as to the acknowledgment by Mrs. Nolen on examination separate and apart from her husband, both in due form of law, were appended ; recited, as its consideration, the payment in cash of $2,376 ; and conveyed a tract of land, which was said to contain 760 acres, with several mules, horses, &c. The complainants were merchants, both doing business in Wetumpka, and they sold goods on credit to said Nolen during the year 1873, and furnished him with supples ; Seaman's account being about $140, and that of McWilliams about $900. The bill alleged, that the deed to Thomas and Sandlin conveyed the whole of Nolen's property, or the bulk of it ; that Nolen was, at the time the deed was executed, greatly embarrassed with debt, if not actually insolvent, and was very dissipated ; that his pecuniary condition was well known to Thomas and Sandlin, who were also well acquainted with his physical and mental incapacity to transact business, caused by excessive drinking ; that taking advantage of his condition, falsely representing to him that McWilliams was about to sue out an attachment against him, and by other fraudulent devices on the part of one or both of them, said Thomas and Sandlin procured the execution of said conveyance to themselves, in fraud of the rights of other creditors ; that no money was in fact paid, as recited in the conveyance, but the only consideration was existing debts due from Nolen to said grantees, which did not amount to the sum recited, and were much less than the value of the property conveyed ; that by a secret agreement between the parties, not expressed in the conveyance, Nolen was to be allowed to retain the possession of the property, without the payment of rent or hire, during the year 1874, and that he did so retain it. It was alleged, also, that Thomas and Sandlin took possession of the property about the first day of January, 1875, and were in possession when the bill was filed, except a portion of the land which they had sold and conveyed to one Kendrick. The complainants alleged and charged that the conveyance to Thomas and Sandlin was fraudulent, in law and in fact, as to the other creditors of Nolen, and sought to have it set aside.

[Seaman v. Nolen.]

Answers were filed by Thomas and Sandlin, denying all the charges of fraud, and asserting the validity of the conveyance; and in their depositions, taken on their own behalf, they denied all the charges of fraud, general and special, and claimed that their debts were equal to the full value of the property. Separate answers were filed by Nolen and wife, which were substantially the same, except that Mrs. Nolen stated all the facts and circumstances connected with the execution of the conveyance, and the representations and inducements by which its execution was procured, while Nolen averred his ignorance of these matters, he being at the time in a state of mental aberration. Mrs. Nolen alleged, also, that she did not give her voluntary signature and assent to the conveyance, but asserted at the time her unwillingness ; and she asked that her answer might be taken and treated as a cross-bill, that the conveyance might be declared inoperative as to the homestead, and that the homestead might be allotted and secured to her and her husband. Nolen also asked that his answer might be taken as a cross-bill, and asked similar relief as to the homestead.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, holding that the evidence did not establish fraud in the execution of the conveyance ; and he also dismissed the cross-bills. The complainants appeal from this decree, and assign as error the dismissal of their bill ; and there are cross assignments of error, by consent, on the part of Mrs. Nolen, founded on the dismissal of her cross-bill.

S. J. DARBY, and WATTS & SON, for appellants.

L. E. PARSONS, jr., for Mrs. Nolen.

OLIVER, GARRETT & SMITH, for the appellees.

STONE, J.—The bill in this case was filed by Seaman and McWilliams, creditors at large of A. J. Nolen, to subject property to the payment of their claims, on the alleged ground that it was conveyed by Nolen to Thomas and Sandlin with the intent to delay, hinder and defraud the complainants and other creditors of the said Nolen.—Code of 1876, §§ 3886, 3253, subd. 8. The conveyance was absolute in terms, and we do not doubt that both Thomas and Sandlin were creditors of Nolen to about the extent they claim. They claim to have purchased the property in absolute payment of what Nolen owed them. If this was so, and they simply secured a payment of their demands in fair contract, then the law will

[Seaman v. Nolen.]

uphold their purchase, no matter what may have been the effect upon Nolen's other creditors. It has been many times decided in this court, that a debtor in failing circumstances may, by a fair, absolute sale, pay one or more of his debts, although the known effect may be to leave him without means to meet his other liabilities. He may elect which he will pay, and if there be no secret trust, or benefit reserved to the grantor, the non-preferred creditors are without remedy.—*Young v. Dumas*, 39 Ala. 60; *Crawford v. Kirksey*, 55 Ala. 282. But, in the race of diligence, the creditor who seeks to become preferred, must do no more than, by fair methods, obtain payment of his own claim. If he go further, and secure a benefit to the failing debtor, this taints the whole transaction.—Code of 1876, §§ 2120, 2124, 2125; *Crawford v. Kirksey, supra.* As we said in the last named case, p. 294: "The creditor must not go beyond the permissible purpose of securing his own demand. If he go beyond this, and secure a benefit to the debtor, he will thereby violate both the letter and spirit of the statute, and his conveyance will be set aside for the fraud."

The testimony in the present record is somewhat voluminous. On many important questions, it is wholly irreconcilable. It is not our intention to comment in detail upon the many repugnancies and irreconcilable conflicts. We will mainly confine ourselves to conclusions of fact, and thus avoid, as far as we can, the disagreeable duty of criticising either the manner of witnesses, or the matter of their testimony. Neither will we consider directly the intemperate habits, or drunkenness of the grantor, at and about the time the deed was executed, as bearing on the *bona fides* of the conveyance. It may be his then condition made him more readily yielding to the influences then brought to bear upon him.

It is manifest from the testimony, that the thought and purpose of obtaining security or payment from Nolen originated with the defendant Thomas. He it was who pressed Nolen for security; and when he learned from the latter that he was unwilling to provide for him without making equal provision for the Temple estate, represented by Sandlin, then Sandlin was brought into the negotiation, and the two worked in concert afterwards. If the two, or either of them, had simply urged upon Nolen, even to success, the duty of securing them, and, in effecting it, they had received property in payment at a fair and reasonable valuation, although in doing so they left him unable to pay his other debts, they would have done nothing the law would condemn.

We do not think this is all of the present case. We are

VOL. LXVIII.

[Seaman v. Nolen.]

convinced from a consideration of the whole testimony that the following is, in substance, a correct summary of the transaction: Nolen was deeply, ruinously indebted, and Thomas either knew it, or was in possession of information which would convince a man of ordinary intelligence that such was the fact. Thomas informed Nolen, either directly or through his wife, that McWilliams had sued out, or was about to sue out, an attachment against him, which would be levied on his property, and in this way excited his fears, and probably his resentment. If McWilliams entertained any such purpose, there is no proof of it in this record; and the proof is far from direct, or satisfactory, that Thomas had even heard such was his intention. Thomas also represented to Nolen, that McWilliams was a hard man, and that he, Thomas, would be much more liberal and generous to him than McWilliams would be. Now, Sandlin took the fruits of these representations, and participated in the transactions after stated, which must fasten on him the fault and consequences of all that was done. We are also convinced it was part and parcel of the understanding and agreement, that Nolen was to occupy the lands, and have the use of the personal property for the next year, and that the grantees in the deed were to furnish him with supplies to make a crop. All this was done, and Nolen paid no rent or hires for the property for that year. If he made any agreement to pay rent or hires, the testimony in proof of it is far from satisfactory. Taking all the testimony together, we are inclined to the opinion, that Nolen was to pay neither hire nor rent; although the lands and personal property were conveyed absolutely to Thomas and Sandlin. The two defendants, Thomas and Sandlin, testify there was no fraud; and they swear, not very positively, that Nolen was to pay, as rent, a sum equal to the interest on the purchase-price of the property. There are many features in their testimony—notably in that of Mr. Thomas—which cause us, at least, to distrust his memory. We are convinced it was part and parcel of the agreement, that Nolen should enjoy the substantial benefits mentioned above; and he being insolvent, that alone stamps the deed as fraudulent, and the same must be annulled and set aside, as against the claims of Nolen's creditors.

On the cross assignments of error by Mrs. Nolen we can grant no relief. She is a married woman, not claiming the homestead in virtue of any title alleged to be in her. Her husband, Nolen, is living, and if there be any homestead right, it is in him, not in her. The cross-bill contains no averment that the husband fails to act in the premises.

Code, § 2832. True, it could not be aliened without her voluntary signature and assent; but that vests no legal or equitable title in her, so long as her husband may live.—*Miller v. Marx*, 55 Ala. 322; *Bender v. Meyer*, 55 Ala. 576; *Jones v. DeGraffenreid*, 60 Ala. 145; *Weiner v. Sterling*, 61 Ala. 98; *Getzler v. Saroni*, 18 Ill. 518; Thompson on Homestead, §§ 695, 696. Could we consider this question, Mrs. Nolen fails to make a case for relief.—*Coleman v. Smith*, 55 Ala. 368; *Miller v. Marx, Ib.* 322. We will, however, so far modify the order dismissing her cross-bill, as to make it a dismissal without prejudice.

On the assignments of error by Seaman and McWilliams, the decree of the chancellor is reversed, and a decree here rendered, granting to complainants relief, to the extent of all property conveyed by the deed, subject to execution against Nolen; and to that extent the deed is vacated and annulled. *Fellows v. Lewis*, 65 Ala. 343. It is referred to the register to take an account, and report to the next term of the Chancery Court the amounts due the several complainants. All other questions are reserved for decision by the chancellor.

On the assignments of error by Mrs. Nolen, we find no error which we can consider, as the pleadings now bring the questions before us.