# Pitts *v.* The State.

*Indictment for Murder.*

1. *Homicide; evidence as to what defendant said several minutes after killing inadmissible; no part of res gestae.*—On a trial under an indictment for murder, where it is shown that after the shooting of the deceased the defendant walked a quarter of a mile to the home of a friend, what the defendant stated to said friend on arriving at his house, is not admissible in evidence; such statement constituting in no sense a part of the *res gestae* of the difficulty.

2. *Homicide; admissibility of threats made in previous difficulty.* While, on a trial under indictment for murder, the facts and particulars of a previous difficulty between the deceased and the defendant are not admissible in evidence, the fact that during the previous difficulty the defendant made threats against the deceased, is admissible in evidence; such testimony having a tendency to show malice on the part of the defendant.

3. *Homicide; testimony of non-expert; admissibility as to condition of wound.*—On a trial under an indictment for murder, where it is shown that the defendant shot the deceased in the leg and that said leg was amputated, a witness who was not a physician or expert, but who assisted in dressing the wound after the amputation of the leg, is competent to testify to the appearance of the deceased's leg just before he died and that it "looked dark" an inch or so from where it had been amputated; such testimony being merely as to a fact, and not as to a conclusion resting in opinion.

4. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where, by reason f a gunshot wound in-

flicted on the deceased by the defendant, it was necessary to amputate the deceased's leg, and one of the physicians attending deceased testified that he could not say what produced his death, and that a day or two before his death the deceased was suffering a great deal from pains in his bowels, which oftentimes resulted from shocks or loss of blood, and from a weakened condition incident to a gun shot wound, it is not competent to ask the witness "If in the morning of the day on which the deceased died, he did not say that his bowels hurt him and that if he could get rid of the bowel trouble he would get all right?"

5. *Homicide; admissibility of dying declarations.*—On a trial under an indictment for murder, where it is shown by the evidence that the deceased repeatedly stated that he was going to die and had given up hope of recovery and that although his friends tried to encourage him he repeatedly expressed his belief that he was going to die, statements made by the deceased under such circumstances are admissible as dying declarations.

6. *Same; same.*—In such a case, it is not error for the court to allow a witness who wrote down the statements of the deceased, to testify that the deceased asked him "to take down his testimony in regard to how the difficulty was."

7. *Homicide; admissibility of evidence.*—On a trial under an indictment for murder, where it is shown tnat on Thursday before the deceased was killed on Saturday, the defendant and the deceased had a difficulty, it is competent for a witness to testify that the deceased on the Friday morning after the first difficulty, and prior to the shooting, askea the witness "if he could get a pistol for him, or if he knew who had a pistol he could get;" it not being shown that the question was asked with reference to the defendant.

8. *Witness; charge of court as to contradictory statements.*—A charge which instructs the jury that if a witness who has been examined during the trial "has made contradictory statements as to material facts in this case, the jury may look to these contradictory statements in order to determine what credibility they will give to testimony of the said witness," asserts a correct proposition of law, and is properly given at the request of the State.

9. *Defendant as a witness; charge as to weight of testimony.*—Where the defendant in a criminal case has testified as a witness in his own behalf, a charge which instructs the jury that the defendant "is interested in the result of this trial, and that they may look to this fact in determining what weight they will attach to his testimony, asserts a correct proposition of

[Pitts v. The State.]

law, and is properly given at the request of the State.

10. *Reasonable doubt; charge in reference thereto.*—A charge in a criminal case is free from error which instructs the jury that "A reasonable doubt must be actual and substantial, not mere possibility speculation. It is not a mere possible doubt, because everything relating to human affairs and depending upon moral evidence is open to some possible doubt or imaginary doubt."

11. *Same; same.*—A charge in a criminal case is free from error which instructs the jury that "While the law requires the guilt of the accused to be proved beyond a reasonable doubt, it does not require that each fact which may aid the jury in reaching the conclusion of guilt shall be clearly proven; but, that on the whole evidence the jury must be able to pronouce that guilt is proved to a moral certainty, or beyond a reasonable doubt."

12. *Homicide; charge as to reasonable doubt.*—A charge is erroneous and properly refused which instructs the jury that "Before they can convict the defendant in this case, they must be satisfied to a moral certainty not only that the proof is consistent with the defendant's guilt, but that it is wholly inconsistent with every other rational conclusion; and, unless the jury are so convinced by the evidence of the defendant's guilt that they will each venture to act upon that decision in matters of the highest concern and importance to his own interest, they must acquit him."

13. *Attorney; argument to jury.*—On a trial under an indictment for murder, where the dying declarations of the deceased have been introduced in evidence, the statement by an attorney for the defendant, in his argument to the jury, that "the experience and observation of mankind and of the jury has probably convinced them that the dying declarations of a man are of a very unreliable species of testimony, and that more innocent men have been convicted upon this character of testimony than upon any other," are properly excluded.

APPEAL from the Circuit Court of Houston.

Tried before the Hon. JOHN P. HUBBARD.

The appellant in this case, Tom Pitts, was indicted for the murder of Wesley Cooley, was convicted of murder in the second degree, and sentenced to the penitentiary for twelve years.

On the trial of the case, it was shown that the difficulty which resulted in the homicide occurred on a public road; that the defendant and his brother were riding

together in a wagon and immediately behind them Wesley Cooley, the deceased, was riding in his wagon; that they had so proceeded for quite a distance; that as they neared a swamp the defendant, who had his shot gun with him, got out of the wagon, and that a few minutes thereafter there was a difficulty between the defendant and the deceased, which resulted in both of them being shot.

The evidence for the State tended to show that there had been a previous difficulty between the defendant and the deceased on the Thursday night preceding the difficulty, which occurred on Saturday afternoon; that as the defendant got out of the wagon, he turned to the deceased and cursing him said that that was about as good a time as any to settle their differences and leveled his gun upon him; that immediately the deceased raised his pistol; that the defendant fired first and the deceased fired two shots from his pistol at the defendant; that the deceased, in trying to dodge the shot of the defendant, leaned over in his wagon and the load took effect in the deceased's leg; that his leg was subsequently amputated and that the deceased died on the Friday after the shooting.

The evidence for the defendant tended to show that he stated to his brother as they approached the swamp that he was going to get out and hunt squirrels; that he got out of the wagon and started into the swamp; that he had taken only a few steps when he heard the deceased say, with an oath, that this was a good time to settle their difficulty; that upon turning around the defendant saw the deceased trying to shoot him with his pistol, and that thereupon he fired upon the deceased; but that the deceased fired first, his pistol ball striking the defendant in the leg below the knee.

There was also evidence introduced on the part of the State tending to show that the defendant had made threats against the deceased, while there was evidence on the part of the defendant tending to show that the deceased had made threats against the defendant.

Mrs. Cooley, the wife of the deceased, testified that on the Friday night before the killing, the defendant came

to the house and the deceased and defendant had a diffi-
culty; that in this difficulty the defendant cursed the de-
ceased. The defendant moved the court to exclude this
testimony of the witness, on the ground that it called for
irrelevant and illegal evidence and for the details of a
former difficulty. The bill of exceptions does not show
that there was any ruling by the court upon this motion.
The solicitor for the State then asked the witness, Mrs.
Cooley, the following question: "Did the defendant,
during the difficulty, make any threats against your hus-
band?" The defendant objected to this question, upon
the ground that it called for illegal evidence, and for the
details of a former difficulty. The court overruled the
objection and the defendant duly excepted. Upon the
witness replying that the defendant said he "was going
home to get his gun and would come back and get him"
(her husband), the defendant moved to exclude the an-
swer upon the same grounds, and duly excepted to the
court overruling the objection.

Dr. Chalker was introduced as a witness for the State,
and testified that he was a practicing physician and that
he had attended the deceased after he was shot, and that
Dr. Williams also treated the deceased; and that he and
Dr. Williams amputated the leg. This witness testified
that he could not say what caused the death of the de-
ceased. He further testified two or three days before the
deceased died he suffered a great deal from very severe
pains in his bowels and complained a great deal of such
pains.

Alpheus Collins, a witness for the State, testified that
he was with the deceased at various times after he was
shot, and almost continually from Sunday up to the time
of his death; that although he was not a physician he
helped dress his wound. Thereupon the State asked
the witness how the wound looked after the leg was am-
putated. The defendant objected to this question, upon
the ground that it called for illegal testimony, and that
the witness was not shown to be an expert or a physician.
The court overruled the objection and the defendant
duly excepted. Upon the witness answering that the
wound and leg "looked dark for an inch or two from

where it was amputated," the defendant moved the court
to exclude the answer upon the same grounds, and duly
excepted to the court overruling the motion.

Mrs. McAllister, who was the mother-in-law of the de-
ceased, testified that she was with the deceased continu-
ally after he was shot and up to the time of his death,
and that she had helped dress the wound. Upon being
asked how the leg looked after it was amputated, the de-
fendant interposed the same objection as to the question,
and upon her answering that it looked dark for an inch
or more above where it was amputated, the defendant·
moved to exclude the answer upon the same grounds
upon which the motion was made to exclude the testi-
mony of the witness Collins. The court separately over-
ruled the objection and motion, and to each of these rul-
ings the defendant separately excepted.

Several of the witnesses for the State testified that
after the deceased was shot and after his leg was ampu-
tated, he repeatedly said that he was going to die; that
the friends who were in the room with him at different
times were trying to encourage him and persuade him
that he would get well, but that he persistently said that
he was going to die; that after having so stated several
times, that he was going to die, he made a statement as
to how the difficulty between him and the defendant oc-
curred.

J. M. Rogers, a witness for the State, who had testified
to the deceased's having repeatedly said that he was go-
ing to die, was asked: "If Cooley, before he died, made
any statement to him as to the difficulty between him
and the defendant?" The defendant objected to this
question, upon the ground that it called for illegal and
irrelevant testimony, and that a sufficient predicate had
not been made to admit the statement as Cooley's dying
declaration. The court overruled the objection and the
defendant duly excepted. The witness answered that
on Thursday before Cooley died on Friday, he made a
statement and requested the witness to reduce it to writ-
ing, which the witness said he did, and produced a paper
which he said contained the statement of Cooley. The
defendant moved to exclude this answer of the witness

to the question upon the same ground, and duly excepted to the court overruling his motion. The solicitor read the paper or statement against the objection and exception of the defendant; but said statement so read as the dying declaration of the deceased is not set forth in the bill of exceptions. The other facts pertaining to the rulings of the trial court, reviewed on the present appeal, are sufficiently set forth in the opinion.

In his argument to the jury, defendant's counsel made the following statement: "That the experience and observation of mankind had been that the dying declarations of a man were very unreliable, and that the jury should be very cautious in convicting on such testimony, and that perhaps more innocent men had been convicted by this character of evidence than upon any other kind." The solicitor objected to this portion of the argument of defendant's counsel, and moved to exclude it from the jury. The court sustained the objection, and instructed the jury that they were not to consider the language of the defendant's counsel, and to this ruling the defendant duly excepted. Thereupon the defendant's counsel continued his argument and used the following language: "The experience and observation of the jury has probably convinced them that the dying declarations of a man are of a very unreliable species of testimony, and that more innocent men had been convicted on this character of testimony than on any other kind." The solicitor again objected to this language, and moved to exclude it from the consideration of the jury. The court granted the motion, and to this ruling the defendant duly excepted. The defendant's counsel, during his further argument to the jury, said: "That the State had offered four witnesses, to-wit, Mrs. Cooley, Mrs. McAllister, Jonah McAllister and J. M. Rogers, who testified; but that he had only had two of them, to-wit, Jonah McAllister and J. M. Rogers, to tell the jury what Cooley had said as to the details or particulars of the difficulty; and that the testimony of Rogers and Jonah McAllister as to what Cooley said took place during the difficulty were in material conflict; and that if he had asked Mrs. Cooley and Mrs. McAllister what Cooley said to them as to

how the difficulty took place, their testimony would doubtless have been in conflict with that of J. M. Rogers and Jonah McAllister."

The court, at the request of the State, gave to the jury the following written charges: (A.) "The court charges the jury that if they find from the evidence that the witness, Joe Pitts, has made contradictory statements as to material facts in this case, or any such facts, the jury may look to these contradictory statements in order to determine what credence they will give to the testimony of the said Joe Pitts." (B.) "The court charges the jury that the defendant, Tom Pitts, is interested in the result of this trial, and that they may look to this fact in determining what weight they will attach to his testimony." (D.) "A reasonable doubt must be actual and substantial, not mere possibility speculation. It is not a mere possible doubt, because everything relating to human affairs and depending upon moral evidence is open to some possible or imaginary doubt." (E.) "While the law requires the guilt of the accused to be proved beyond a reasonable doubt, it does not require that each fact which may aid the jury in reaching the conclusion of guilt shall be clearly proven; but, that on the whole evidence the jury must be able to pronounce that guilt is proved to a moral certainty, or beyond a reasonable doubt." To the giving of each of these charges the defendant separately excepted, and separately and severally excepted to the court's refusal to give each of the following charges requested by him: (1.) "The court charges the jury that if the defendant would have increased his danger by retreating, then he was under no obligations to retreat." (2.) "The court charges the jury that before they can convict the defendant in this case, they must be satisfied to a moral certainty not only that the proof is consistent with the defendant's guilt, but that it is wholly inconsistent with every other rational conclusion; and unless the jury are so convinced by the evidence of the defendant's guilt that they will each venture to act upon that decision in matters of the highest concern and importance to his own interest, they must acquit him."

ESPY & FARMER, for appellant.—The witness Bonner should have been permitted to testify as to what the defendant said to him just after the difficulty. What defendant said to the witness was sufficiently near the time and the scene of the killing as to form a part of the *res gestae.*—*Ford v. State,* 129 Ala. 16; *Nelson v. State,* 130 Ala. 83.

The court, against the objection of the defendant, permitted the State to prove by one Collins, who testified that he nursed Cooley after he was shot, to further testify that after Cooley's leg was amputated, he examined it and it looked dark. This was error. It was not shown that the witness was an expert, or that he had any knowledge of the character of the wound.—*Rash v. State,* 61 Ala. 89.

There was not a sufficient predicate laid for the introduction of the statements of the deceased as dying declarations. A full and fair consideration of the testimony, on which the predicate was based, shows that the deceased at the time he made the statements, to which the witness McAllister testified, had not given up all hope of life.—*Justice v. State,* 99 Ala. 108; *Young v. State,* 95 Ala. 4.

Under the authorities, the action of the court in excluding the remarks of counsel was error, which should work the reversal of this case.—*Jarvis v. State,* 138 Ala. 13.

MASSEY WILSON, Attorney-General, for the State. The testimony sought to be elicited from witness Bonner had no bearing on the guilt or innocence of the defendant, and it is difficult to see how it can be introduced as a part of the *res gestae* of the killing. The occurrence was admittedly after the shooting, and after defendant had walked a quarter of a mile to the witness' house. The testimony was properly excluded.—*Harkness v. State,* 129 Ala. 71, 78; *Nelson v. State,* 130 Ala. 83, 88; *Goley v. State,* 87 Ala. 57, 60.

The witness Collins, though not a physician or an expert, was properly permitted to testify that he saw the leg of deceased soon after it had been amputated, and

that it "looked dark for an inch or two from where it was amputated." The testimony did not purport to be expert, nor did it require an expert to testify that the leg "looked dark." The witness merely stated *facts* known to him.—*Mayberry v. State,* 107 Ala. 64, 67.

The defendant's counsel asked the witness Collins whether he (deceased) did not say that if he could get rid of his bowel trouble he would be all right, to which question the court sustained the State's objection. The evidence was clearly inadmissible, not being brought within the principle of dying declarations, nor within the principle of *res gestae.* It was simply hearsay, of a class always inadmissible.—*Johnson v. State,* 94 Ala. 35, 41; *Sullivan v. State,* 102 Ala. 135, 142.

The charges given at the request of the State asserted a correct proposition of law. It was not permissible for the defendant to prove that during the previous difficulty, several days before the killing, deceased (Cooley) cursed the defendant.—*Willingham v. State,* 130 Ala. 35.

The charges 1 and 2 requested by the defendant, were erroneous and properly refused. A sufficient predicate had been laid for the admission of the dying declarations. It was shown that deceased expressed belief time and again that he would die, although some of his friends were inclined to hold out slight hopes to him, and the fact that he asked that a doctor be sent for, does not affect their admissibility.—*Clark v. State,* 105 Ala. 91.

The action of the court in excluding from the jury the statements made by counsel in his argument of the case, was free from error.—*Hale v. State,* 122 Ala. 85; *Smith v. State,* 118 Ala. 117; *Mose v. State,* 36 Ala. 211; *Jackson v. State,* 94 Ala. 85; *Ming v. State,* 73 Ala. 1; *Sanders v. State,* 134 Ala. 74.

In each instance, counsel stated matters which had no connection with the case, and which were not supported by the facts in evidence.—*Cross v. State,* 68 Ala. 476; *Dunmore v. State,* 115 Ala. 69.

DOWDELL, J.—The appellant was tried and convicted on an indictment for the murder of Wesley Cooley, and was sentenced to imprisonment in the peniten-

tiary.  On the trial one Bonner, who was examined as a
witness for the State, testified that he heard the shooting
by the defendant and Cooley, which resulted in the death
of the latter, and that a few minutes afterwards, the de-
fendant came to his (witness') house.  The defendant's
counsel then asked the witness what the defendant said
to him when he came to witness' house.  To this question
the court sustained an objection interposed by the State.
It is now insisted by appellant that the evidence sought
was a part of the res gestae of the difficulty, and that the
court erred in its ruling.  It is not disputed that this
was several minutes after the shooting that was heard
by the witness, and after the defendant had walked a
quarter of a mile to the home of witness.  The difficulty
had ended, the declaration sought to be introduced was
separate in point of time and place from the shooting.
It is difficult to understand how under the circumstances
the declaration sought to be introduced could form a
part of the res gestae of the shooting.  We are quite
clear that the court committed no error in sustaining the
objection.—Harkness v. State, 129 Ala. 71, 78; Nelson
v. State, 130 Ala. 83; Goley v. State, 87 Ala. 57.

The testimony of Mrs. Cooley, both as to the difficulty
between the defendant and the deceased, on Thursday
night previous to the shooting, and as to the threats
made at that time by the defendant against the deceased,
was properly admitted as tending to show motive and
malice.  It is no violation of the rule forbidding inquiry
into the particulars of a previous difficulty, to allow evi-
dence of threats made by the defendant against the de-
ceased, although made at the time and forming part of
such previous difficulty; and this upon the general prop-
osition, that it is always admissible to prove previous
threats made by the defendant to show malice.—Hark-
ness v. State, 129 Ala. 71.  The motion of the defendant
to exclude the statement of Mrs. Cooley that the defend-
ant in the previous difficulty of Thursday night before
the shooting on Saturday cursed the deceased, does not
appear to have been ruled on by the court.

What is said above applies to the testimony of other
witnesses as to threats made by the defendant against

the deceased at the time of such previous difficulty. The testimony of the witnesses Collins and McAllister as to the appearance of the deceased's leg just before he died, that it "looked dark" an inch or so from where it had been amputated, was not objectionable on the ground that it related to matter calling for expert evidence, and that these witnesses were not shown to be experts. They testified merely to a fact and not to a conclusion resting in opinion, or to an opinion based on any hypothetical statement. There was no error in sustaining the State's objection to the question asked the witness Collins by the defendant's counsel, "If in the morning of the day on which Cooley died, Cooley did not say that his bowels hurt him, and that if he could get rid of the bowel trouble he would get all right?" The evidence sought to be elicited by this question was not addressed to the court for the purpose of determining the sufficiency of the predicate for the admission of dying declarations, but was offered for consideration by the jury, upon the question of the defendant's guilt or innocence. For this purpose it was inadmissible, being nothing more than hearsay evidence. Besides, it was immaterial.

Dr. Chalker, the physician who attended upon the deceased, had already testified, "that for a day or two before, and at the time of his (deceased's) death, he was suffering with a very severe bowel trouble, that he complained that his bowels were paining him a great deal. That severe bowel trouble sometimes results from shocks, loss of blood, and a weakened condition resulting from gun shot wounds." It is contended by counsel for appellant, that with the evidence in, sought to be elicited, it would have been open to the jury to find that death resulted from the bowel trouble. If death resulted immediately from a "bowel trouble," which had been brought on or superinduced by the gun shot wound, or the amputation of deceased's leg, rendered necessary by the gun shot wound, the fact that the "bowel trouble" was the immediate cause of death, would furnish the defendant no protection against a charge of unlawful homicide.—*Daughdrill v. State*, 113 Ala. 7, 34.

[Pitts v. The State.]

Nor was this evidence competent as a dying declaration. It constituted in no sense a part of the *res gestae* of the shooting.—*Sullivan v. State,* 102 Ala. 141-2.

There was no error in allowing the witness Rogers to state that the deceased asked him "to take down his testimony in regard to how the difficulty was." This was merely showing the witness's connection with the statement, and was altogether proper.

The predicate for the admission of dying declarations was sufficiently laid. The evidence showed that the deceased had given up hope of recovery. Although some of his friends tried to encourage him, he time and again expressed his belief that he was going to die. The fact that he asked that the doctor be sent for, was not in itself and alone sufficient to affect the admissibility of the declarations under the predicate. It was shown that he was at the time suffering with severe pain in his bowels, and it was natural that he should want the doctor to allay his sufferings.—*Milton v. State,* 134 Ala. 42, 46; *Clark v. State,* 105 Ala. 91.

The statement of the deceased written out by the witness Rogers as the dying declaration, was offered in evidence, and was objected to by the defendant, which objection was overruled. The paper is no where shown in the bill of exceptions, nor is its substance given. In the absence of the paper and evidence of its contents, we are unable to pass upon the trial court's ruling on the objection, except upon the ground of the objection, that no sufficient predicate had been made for the admission of dying declarations, and this we have already said was sufficiently shown. There was, besides, testimony of other witnesses of dying declarations made by the deceased in regard to the difficulty in which he was shot by the defendant.

There was no error in refusing to allow the defendant to prove that the deceased, in the previous difficulty, which had been testified to, cursed the defendant. This would have been in violation of the rule, which forbids entering into particulars of a previous difficulty.—*Willingham v. State,* 130 Ala. 35; *Harkness v. State, supra.*

There was no error in refusing to allow the defendant's witness Amerson to testify that the deceased on Friday morning after the first difficulty, and prior to the day of the shooting, asked the witness "if he could get a pistol from him, or if he knew who had a pistol that he could get." It was not shown that the question was asked with reference to the defendant, and, therefore, it did not imply any purpose to injure him. If what was proposed to be shown by this evidence could be classed as a threat, it was objectionable as being general, and not being directed to any particular individual. As was said in *Henson v. State,* 120 Ala. 316, 320, "A mere general threat or one not directed to any special person is not in such a case admissible as evidence to show an intent to harm a particular individual."

Charge "A" given at the request of the State was proper.—*Hale v. State,* 122 Ala. 85.

A charge similar to charge "B" was approved by this court in *Smith v. State,* 118 Ala. 117. The giving of this charge was free from error.

Charge "D" was a correct exposition of the law, and the giving of it as requested was free from error. So, too, charge "E" given at the request of the State, correctly stated the law.—*Ming v. State,* 73 Ala. 1.

Charge 1 requested by the defendant was under the evidence in the case calculated to mislead the jury, and for this reason, if for no other, was properly refused.

Charge 2 requested by the defendant was expressly condemned in *Sanders v. State,* 134 Ala. 74.

The court's action in excluding from the jury certain statements made in argument by defendant's counsel as shown in the bill of exceptions, was free from error. The matter excluded had no legitimate bearing on the case, and these statements were unsupported by the facts in evidence before the jury.—*Cross v. State,* 68 Ala. 466; *Dunmore v. State,* 115 Ala. 69.

We find no reversible error in the record, and the judgment appealed from must be affirmed.

Affirmed.