(113 So. 291)

## NELSON v. FIRST NAT. BANK OF BRANTLEY et al. (4 Div. 277.)

Supreme Court of Alabama. June 9, 1927.

1. Homestead ⬥131—A wife may sue to remove cloud threatening her interest in husband's homestead where he declines to act (Code 1923, § 7913).

In view of Code 1923, § 7913, a wife has such an interest in her husband's homestead that she can sue to remove a cloud, which threatens her rights and interests, when the husband declines to act.

2. Acknowledgment ⬥62(2)—Acknowledgment of mortgages to husband's homestead by wife held, under evidence, to have been taken in county of notary's jurisdiction.

Acknowledgment of mortgages to husband's homestead by a married woman held, under evidence, to have been taken in county for which notary was appointed and within his jurisdiction.

3. Acknowledgment ⬥56—Duly certified separate acknowledgment of a married woman may be impeached for fraud or duress of mortgagee through notary as agent.

A duly certified separate acknowledgment of a married woman to a mortgage of her husband's homestead may be impeached for fraud or duress, participated in by the mortgagee through the notary as an agent, where no rights of innocent third persons have intervened.

4. Acknowledgment ⬥62(2)—Evidence of husband's alleged coercion with knowledge of mortgagee, held insufficient to impeach wife's separate notarial acknowledgment to mortgages on homestead.

Evidence of alleged duress and coercion by husband with knowledge of mortgagee held insufficient to impeach certificate of acknowledgment of a married woman that she signed mortgages to her husband's homestead of her own free will, without fear, constraint, or threats on the part of the husband.

5. Homestead ⬥131—Married woman held not to have sustained burden to show fraud of mortgagee in procuring her execution of mortgages to husband's homestead.

In suit by married woman to cancel mortgages on homestead of her husband, evidence *held* insufficient to sustain her burden of proof of mortgagee's fraud in procuring her execution of the mortgages.

6. Homestead ⬥131—While remedy in wife to protect husband's homestead is recognized, collusive arrangement between her and husband cannot be countenanced.

While remedy in wife to protect husband's homestead is recognized in a proper case, the Supreme Court cannot countenance collusive arrangements between husband and wife, using her name for mutual advantage.

7. Trusts ⬥63¾—Exchange by mortgagor of standing timber for other lands, taking title to himself, supports bill by mortgagee to declare resulting trust.

An exchange by the mortgagor of standing timber on mortgaged lands for other lands, taking title to himself, the mortgage security being insufficient, supports bill by mortgagee to declare resulting trust in lands received in exchange.

8. Trusts ⬥374—Mortgagee's measure of recovery where mortgagor exchanged standing timber for other lands is extent to which mortgage security was depleted.

Where mortgagor exchanged standing timber on mortgaged lands for other lands, taking title to himself, mortgagee's measure of recovery in bill to declare resulting trust in lands received in exchange is extent to which mortgage security was depleted.

Appeal from Circuit Court, Coffee County; W. L. Parks, Judge.

Bill in equity by Mary Elizabeth (Polly) Nelson against the First National Bank of Brantley and B. D. Nelson, to cancel mortgages on the homestead of her husband, and cross-bill by the respondent First National Bank to declare a resulting trust in other lands of the mortgagor. From a decree denying complainant relief (except as to right of redemption), and granting relief under the cross-bill, complainant appeals. Affirmed.

J. C. Fleming and J. N. Ham, both of Elba, for appellant.

When the wife's signature to a deed is procured by fraud or duress of the husband and grantee, the husband and wife are not precluded from recovering the land except as against a bona fide purchaser from the grantee. Gilley v. Denman, 185 Ala. 561, 64 So. 97. Where the husband refuses to take the necessary steps to remove a cloud from title to the homestead, the wife may, by virtue of her interest, come into equity to have the title cleared. Taylor v. Taylor, 207 Ala. 217,

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

92 So. 109; Grider v. Amer. Freehold L. M. Co., 99 Ala. 281, 12 So. 775, 42 Am. St. Rep. 58. An estoppel is not wrought or brought into. force, and cannot supply the place of signing and acknowledging an instrument as required by statute. Sims v. Gunter, 201 Ala. 286, 78 So. 62. In order to make good title to the homestead it is necessary that the wife be examined separate and apart from her husband and in the manner provided by statute. Slappy v. Hanners, 137 Ala. 199, 33 So. 900. Misrepresentation of a material fact, made willfully to deceive or recklessly without knowledge, or if made by mistake innocently and acted on by the opposite party, constitutes legal fraud. Southern States F. & C. Co. v. Wilmer Store Co., 180 Ala. 1, 60 So. 98. Suppression of a fact material to be known, and which the party is under obligation to communicate, constitutes fraud. Metropolitan L. I. Co. v. Goodman, 10 Ala. App. 446, 65 So. 449.

Wilkerson & Brunson, of Elba, for appellees.

A constructive trust arises whenever one's property has been wrongfully appropriated and converted into a different form, and will be impressed upon the new form of property wherever it may be identified, except in the hands of a bona fide purchaser for value. 3 Pomeroy's Eq. Jur. pp. 2397, 2401; Peters v. Rhodes, 157 Ala. 25, 47 So. 183; Winston v. Miller, 139 Ala. 260, 35 So. 853; Thompson v. Thompson, 107 Ala. 169, 18 So. 247.

BOULDIN, J. [1] The bill is filed by a married woman to cancel and annul mortgages executed upon the homestead of the husband.

The wife had such interest in the homestead as a family residence and by virtue of her inchoate dower right that she may come into equity to remove a cloud which threatens her rights and interests, when the husband declines to act. Grider v. A. F. L. Mtg. Co., 99 Ala. 281, 283, 12 So. 775, 42 Am. St. Rep. 58; Seaman v. Nolen, 68 Ala. 463; Taylor v. Taylor, 207 Ala. 217, 92 So. 109; People's Bank v. Barrow, 208 Ala. 433, 94 So. 600; Code, § 7913.

The mortgagor owned 160 acres of land in a body, alleged not to exceed $2,000 in value. He and his wife, this complainant, executed to the respondent bank two mortgages, one in February, 1915, and the other in January, 1916. The bill was filed in February, 1924.

The grounds of attack upon the mortgages are three:

[2] First, that the acknowledgments to the mortgages were taken by a notary public without the county for which he was appointed, beyond his jurisdiction, and therefore void.

The mortgagor's lands lay one 40 in Crenshaw and three in Coffee county, his residence being located in Coffee county near the county line, and, by the weight of evidence, within about 75 feet of the line. The officer was a notary public of Crenshaw county. It is without dispute that in taking the acknowledgments of 1915 he caused the mortgagors, husband and wife, to leave their residence and go to a point on the Crenshaw county side of the line; by the weight of evidence it was some 300 to 400 feet inside Crenshaw county. The second mortgage of 1916, given in renewal of that of 1915, with amount added for advances made for 1916, was acknowledged before the same officer. Again, the makers left the residence to execute the instrument. The contention of complainant is that they did not reach the county line, but the acknowledgment was taken just on the Coffee county side of the line. Suffice to say, it clearly appears that the officer had taken care the year before to ascertain the location of the line, and under all the evidence we reach the ready conclusion that the acknowledgments to both mortgages were taken in Crenshaw county.

[3, 4] Second, duress or coercion on the part of the husband, with notice to the mortgagee. It appears that L. E. Stephenson, the bookkeeper of the mortgagee bank, acted as its agent in presenting and procuring the execution of the mortgages, and also as notary public in certifying acknowledgments. Duress on the part of the husband, known to and acquiesced in by him as such agent, would be such participation in a fraud on the wife as would bind the mortgagee. Notwithstanding, as notary public, he had jurisdiction of the person and duly certified her separate acknowledgment, it may be impeached for fraud or duress participated in by the mortgagee through him as agent, no rights of innocent third persons having intervened. Gilley v. Denman, 185 Ala. 561, 64 So. 97; Grider v. A. F. L. Mtg. Co., 99 Ala. 281, 12 So. 775, 42 Am. St. Rep. 58.

A study of the evidence does not lead us to a conclusion favorable to complainant on this issue. We are not satisfied there was duress on the part of the husband. A detailed discussion will not be given. Appellant properly concedes a weakness in the case on this issue as well as that above discussed. We are convinced that, so far as known to Mr. Stephenson, complainant only expressed or showed regret at having to incumber the lands in order to procure further loans. This was probably the extent of the matter as between husband and wife.

The certificate of acknowledgment that she signed of her own free will and accord, and without fear, constraint, or threats on the part of the husband has not been successfully impeached as to either mortgage.

[5] Third, fraud on the part of the mortgagee in the procurement of the mortgage. This complaint is directed to misrepresenta-

tion of the contents of the mortgages, inducing the signature of the wife, who could not read and write. Alleged misrepresentations go to the amount of the debt secured and to the identity or area of lands mortgaged.

Our study of the entire record brings us to the conclusion that complainant has not met the burden of proof on the issue of fraud; that the evidence on this issue is little, if any, stronger than on the other issues raised and backed by the same evidence in the main.

Without dispute, 80 acres of the mortgaged lands were sold by agreement, in 1918, to the mortgagor's son for $1,200, the whole of the purchase money being applied by agreement to the payment pro tanto of these mortgages. This does not comport with a contention raised six years later that the mortgages were to cover only advances of $150 to $200, made at their respective dates. This transaction, not impeached, was a ratification, if such be needed, of the mortgages upon that 80, leaving one 40 of the lands mortgaged, the subject of this suit. Suffice to say, we do not find misrepresentation as to the lands on the part of Mr. Stephenson. His representations, we think, merely related to omission of the 40 occupied by the residence, which was true. Mature business experience would, no doubt, suggest to Mr. Stephenson the wisdom of reading the instrument in such cases, whether requested or not. Reliance upon an acknowledgment by the maker, however, and due certification thereof does not import fraud or otherwise invalidate the instrument.

[6] Indications appear of cordial unity between husband and wife in conceiving and promoting this suit in the wife's name; and that, after refusal of the bank to further add to the long-standing and accumulating indebtedness without further security. While a remedy in the wife to protect the homestead, although the property of the husband, is recognized in a proper case, this court cannot give countenance to collusive arrangements between husband and wife, using her name for mutual advantage.

[7, 8] An exchange by the mortgagor of standing timber on mortgaged lands for other lands, taking title to himself, the mortgage security being insufficient, supports a bill in equity by the mortgagee to declare a resulting trust in the lands received in exchange. The proper measure of recovery is the extent to which the mortgage security is depleted. Under the admitted facts, the mortgages being held valid, the mortgagee was properly decreed relief on the cross-bill to declare and enforce a resulting trust on the 30-acre tract acquired from Miller-Brent Lumber Company, in so far as the considera-

tion represented timber taken from the 40 acres still covered by the mortgages.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.